# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re:** ) ) ) ) ) **THE BENNINGTON CORPORATION,** ) ) ) ) **Debtor.** ) ) | **Case No. 20-00321** **(Chapter 11)** |

### DISTRICT OF COLUMBIA'S MOTION TO CONTINUE
### RETENTION AND FUNDING OF STATE COURT ORDERED
### <u>RECEIVER PURSUANT TO SUPERIOR COURT ORDERS</u>

NOW COMES the District of Columbia ("District"), by and through its attorneys, the Office of the Attorney General for the District of Columbia, and hereby files its Motion to Continue Retention and Funding of State Court Ordered Property Manager Pursuant to Superior Court Order ("Motion to Retain"). In support whereof, the District states as follows:

### JURISDICTION

(1) This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and 11 U.S.C. § 1104 *et seq.* This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

### PARTIES

(2) The District, a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States.

(3) Debtor The Bennington Corporation ("Debtor" or "Bennington") was incorporated thirty years ago under the laws of the District of Columbia by Mehrdad Valibeigi ("Valibeigi") and maintains its principal place of business at 12577 Royal Wolf Place, Fairfax, Virginia, 22030. Debtor is the owner of three buildings with a total of 35-unit apartments located at 4559 and 4569 Benning Road, S.E. and 4480 C Street, S.E., Washington, D.C. 20019 ("Property"), and is engaged in the business of renting residential apartments. Mr. Valibeigi is the 100% owner and president of Debtor.

## STATEMENT OF FACTS

(4) Over thirty years ago, Valibeigi ("Valibeigi") founded The Bennington Corporation and incorporated Bennington under the laws of the District of Columbia. Bennington was created to purchase, sell and manage real estate. Valibeigi, the sole owner of Debtor, and a relative, Nima Valibeigi, are Debtor's only corporate officers. Valibeigi is also a 50% owner of the Astor Apartments, owned by the Astor Partnership, Bankruptcy Case No. 20-00229, a companion case which filed for bankruptcy protection on May 19, 2020.

(5) In October 1987, Debtor acquired title to the Property. The Property consists of three buildings with a total of 35 apartment units and is a rental housing accommodation located within the District of Columbia. Debtor owns, operates, manages, and otherwise controls the Property.

(5) Once Debtor acquired title to the Property, it began leasing units to tenants through lease agreements. Each lease agreement contained an implied warranty of habitability that obligated Debtor to maintain the Property in a livable condition and in compliance with the District's laws and regulations, including the District's housing code and mold laws.

(6) The Property, however, has suffered from a history of neglect and indifference resulting from the actions or omissions of Debtor. Debtor's pattern of neglect at the Property stretches back years. The tenants at the Property have suffered from numerous dangerous conditions, including;

    (a) deteriorating plumbing, which has resulted in water damage leading to chronic broken pipes, collapsed ceilings, and rampant mold contamination;

    (b) severe rodent and roach infestations;

    (c) inconsistent trash collection, which has resulted in overflowing receptacles and exacerbation of the unsanitary conditions; and

    (d) defective heating and air conditioning systems.

(7) All of these conditions have posed a serious threat to the health, safety, and security of the tenants. Tenants repeatedly informed Debtor of these conditions, yet Debtor allowed the conditions to remain unabated for years—well above the thirty-day threshold necessary to warrant receivership under D.C. Code § 42-3651.02(b). The refusal of Debtor to abate these housing code violations in a timely manner has been egregious in light of the fact that many of the tenants are elderly, disabled and/or have modest financial means, and therefore lack feasible alternatives to the unsafe and unhealthy rental accommodations inflicted upon them by Debtor.

(8) Accordingly, in October 2018, the Attorney General for the District of Columbia, in accordance with D.C. Code § 42-3651.03, filed an action in the Superior Court of the District of Columbia ("Superior Court") to appoint a receiver to address hazardous housing conditions that Debtor failed to abate pursuant to the Tenant Receivership Act ("TRA"), D.C. Code §§ 42-3651.01-.08, and the Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901–3913. The District's action also sought to provide injunctive relief, restitution to tenants, assess

penalties, and collect reasonable attorney's fees and costs for violations of the CPPA, and to deter such violations from occurring in the future.

(9) In January 2019, the Court held a three-day evidentiary hearing on the District's Motion to Appoint a Receiver. The Superior Court heard evidence from four tenants, a fire marshal, an OAG investigator, and the District's mold expert. *See* Ct. Dkt. 2018 CA 007253 at Jan. 22-23, 2019. Their testimony confirmed that Debtor had allowed the Property to descend into squalid conditions. The tenants testified that despite their calls, texts, and in-person requests, repairs were sparse. Moreover, any repairs that were made were inadequate. Fire Marshal James Pennington also testified that despite serving Defendants with a Notice of Violation, major upgrades were never made to the fire suppression system. Meanwhile, Debtor and its owner, Valibeigi, continued to lease apartments at the property.

(10) At the conclusion of the January 2019 hearing, in lieu of appointing a receiver at that time, the Court ordered the parties to submit an Abatement Plan. *See* Ct. Dkt. 2018 CA 007253 at Jan. 29, 2019. The Abatement Plan, consented to by Debtor Bennington and Valibeigi, set out a Court-supervised repair plan for the Property that Debtor Bennington and Valibeigi were permitted by the Superior Court to manage and oversee and were directed to implement. *See* July 23, 2019 Abatement Plan attached hereto and made a part hereof as District Exhibit No. 1. In consenting to the Abatement Plan, Debtor Bennington and Valibeigi represented that they had the financial means to bring the Property up to code and comply with District law. *Id*. Accordingly, the Superior Court ordered Debtor Bennington and Valibeigi to deposit $75,000 into the Court Registry in order to fund the Abatement Plan.

(11) Despite having funds at their disposal, Debtor Bennington and Valibeigi made little progress on complying with the Abatement Plan and making the repairs as ordered by the

4

Superior Court. After months of Debtor's failing to repair the Property or implement the Abatement Plan, the District again moved for appointment of a receiver under the TRA, in November 2019. See Nov. 21, 2019 Order Appointing Receiver attached hereto and made a part hereof as District Exhibit No. 2.

(12) On November 21, 2019, the Superior Court granted the District's request and appointed Catalyst and its manager, Paula Forshee, as the temporary receiver over the Property. The Court also directed Debtor Bennington and Valibeigi to pay $25,000 as initial funding for the Receiver. While Debtor Bennington and Valibeigi paid $5,000 into the Court registry, they never complied with the Superior Court Order to provide the remaining $20,000 funding required by the Court.

(13) In response to Defendants' failure to fund the receivership as ordered, on December 5, 2019, the District filed a Motion to Show Cause. During the contempt proceedings, Debtor Bennington and Valibeigi argued that they had an inability to pay the remaining $20,000 to fund the Receiver.

(14) However, bank statements of Debtor Bennington and Valibeigi revealed that two days before the Receiver was appointed, Bennington received $64,000. Rather than devoting those funds toward complying with the Superior Court's Order and satisfying Debtor Bennington's obligation to fund the Receiver, Valibeigi used Debtor Bennington's funds to pay his home mortgage and gamble at the MGM National Harbor Resort & Casino. *See* District Exhibit No. 3 at 8 – 12. Because Defendants did not prove an inability to fund the receivership, they were held in contempt for failing to abide by the November 21, 2019 Order Appointing Receiver. See Feb. 21, 2020 Conditional Order of Civil Contempt, attached hereto and made a

part hereof as District Exhibit No. 3. Indeed, Mr. Valibeigi was ordered to spend five days in jail for his defiance of the Superior Court's Order to fund the Receiver.

(15) Further, pursuant to the Superior Court's November 21, 2019 Order Appointing Receiver, Debtor is expressly prohibited from overseeing any repair obligations at the Property. Instead, Debtor is instructed to fund Catalyst Property Solutions. While Catalyst has made emergency repairs, the rents are insufficient to meet the cost of the repair demands of the Property or pay bills as ordered by the Superior Court. Currently, the Receiver has no funds with which to make those payments.

## ARGUMENT

(16) Section 543 of the Bankruptcy Code, 11 U.S.C. 543 ("Section 543"), governs what actions may be taken by a "custodian" of property of the estate following the filing of a bankruptcy petition. Section 543(a) limits the disbursements that may be made by a custodian. Section 543(b) requires the custodian to deliver any property of the debtor held by the custodian to the debtor or trustee, and to file an accounting.

(17) Section 543(d)(1) authorizes the Court to excuse a custodian from each of these requirements. This section provides:

> After notice and hearing, the bankruptcy court - (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property.

11 U.S.C. § 543(d)(1). A state court receiver comes within the definition of a "custodian" within the meaning of Section 101(11) of the Bankruptcy Code.

(14) Bankruptcy courts have concluded that "[a] receiver could be left in possession even if a Chapter 11 trustee were appointed." *In re 400 Madison Ave. Ltd. Pshp.*, 213 B.R. 888, 895 (Bankr. S.D. N.Y. 1997). As the *Madison Ave.* Court stated,

> [Section] 543(d)(1) lets the court suspend the provisions of the Code that contemplate a Chapter 11 debtor in possession will manage and operate so much of its property as is in the hands of a receiver at the filing date. . . . The duties of a receiver retained in possession under Code § 543(d) are limited to the preservation and care of the property under his control. Since no section of the Code includes a receiver who remains in possession within the definition of trustee, the receiver does not take on the obligations and duties of a Chapter 11 trustee nor the somewhat different ones of a debtor-in-possession set forth in Code § 1107. ***Simply put the receiver has absolutely no responsibility to ensure the progress of the case by filing a plan of reorganization or negotiating with creditors or to perform any other duties which are the prerogative and burden of a debtor-in-possession and a trustee.*** . . . The receiver left in possession by the bankruptcy court has no role in the bankruptcy case other than to manage and preserve the property in his charge in accordance with the orders governing his appointment.

*Id*. at 895 (emphasis supplied).

(15) While a bankruptcy court cannot appoint a receiver, *see In re Stratesec, Inc.*, 324 B.R. 156, 157 (Bankr. D.C. 2004) (citing to 11 U.S.C. § 105(b)), where a receiver has been appointed by a state court, "[t]he state court appointed receiver is a 'custodian' within the meaning of § 101(11) of the code and may be permitted to continue in place in a bankruptcy case in certain circumstances." *In re R & G Properties, Inc.*, No. 08-10876, 2008 Bankr. LEXIS 3132, 2008 WL 4966774 (Bankr. D.Vt. Nov. 21, 2008) at 11. *See also In re Bullitt Utils., Inc.*, 558 B.R. 173, 178 (Bankr. W.D. Ky. 2016).

(16) The authority of a bankruptcy court to permit a "custodian," including a receiver or property manager, to continue in possession, custody, or control of such property is found in the exception to the general turnover rule pursuant to Section 543(d))(1). "This exception is a

7

modified abstention provision, akin to the abstention provisions found in Section 305 of the Bankruptcy Code, 11 U.S.C. § 305, and whether the Court decides to apply § 543(d)(1) is based on the exercise of its discretion." *In re R & G Properties, Inc.*, supra at 11.

(17) When determining whether to except a custodian from the requirements of subsections 543(a), (b), and (c), "the paramount and sole concern" is the interests of the creditors. *In re Falconridge*, 2007 WL 3332769 at * 7 (Bankr. N.D. Ill. Nov. 8, 2007). A request for excuse from turnover requires the Court to examine (1) the debtor's likelihood of reorganization; (2) the probability that funds required for reorganization will be available; and (3) whether the evidence shows mismanagement of the property by the debtor. *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989).

(18) Each of these factors supports keeping the Property Manager in place. Initially, the Debtor's ability to reorganize depends on the value of the Property, which is the Debtor's sole asset. The value of the Property, in turn, depends on its condition. The Receiver appointed by the Superior Court is the best person to preserve and protect the Property, and its value.

(19) In addition, the availability of funds for reorganization is, at best, questionable. Quite simply, Debtor could not operate the Property at a level sufficient to generate funds for a reorganization. When Debtor managed the Property, it collected rents, but still failed to maintain the Property, as reflected by the July 20, 2020 Property Condition Report, assertions in the District's Complaint, and the findings made by the Superior Court. Debtor also failed to pay utilities. Bankruptcy Courts have also found that the existence of deferred maintenance and upkeep issues on a property raise questions about the availability of sufficient funds for a reorganization. *Bryant Manor LLC*, 422 B.R. 278, 290 (Bankr. D. Kan. 2010).

(20) Debtor also mismanaged the Property. In *Bryant Manor*, the Bankruptcy Court excused a state court receiver from the turnover requirements of Section 543, 11 U.S.C. 543, and authorized the receiver to continue to manage the debtor's multifamily property, because it would be in the best interest of creditors. In *Bryant Manor,* the court identified a number of factors that evidenced the debtor's mismanagement of the Property. These factors include:

- The debtor was not current on utility payments.
- There were many occurrences of deferred maintenance at the property.
- Some units had water damage or mold.
- Critical safety items were missing and smoke detectors had expired.
- The property had safety issues.

*Bryant Manor LLC*, 422 B.R. at 291-292.

(21) These factors are present at the Property. The Property suffers from a defective plumbing system which has caused a backup of sewage. The defective plumbing system has also caused leaks, which have led to structural damage, including collapsed ceilings. In addition, water damage has resulted in extensive mold contamination. The Property also suffers from a severe rodent and roach infestation. Rodents enter and exit the units through holes and open spaces in the units. Trash collection at the Property is inconsistent and the trash dumpster at the Property is periodically full or overflowing. The common areas at the Property are not cleaned regularly and are often cluttered with trash. Several units have issues with the heating and air conditioning system wherein some of the tenants are unable to adjust the temperature in their unit. This leads to units being extremely overheated in the summer months and cold during the winter. The Superior Court found the tenants living in unsafe conditions.

(22) The findings by the Superior Court after the three-day hearing clearly demonstrate that Debtor has mismanaged the Property.  In addition, the findings in the July 20, 2020 Property Condition Report, which is part of the record in the Superior Court case, further highlight that Debtor has mismanaged the Property.

(23) Debtor filed the case as a single asset real estate case.  Since the Property is Debtor's sole asset, it is critical that the Property is properly maintained, preserved and its value maximized for the bankruptcy estate.

(24) Under the circumstances, excusing the Receiver from complying with Section 543 and keeping the Receiver in place will ensure that the efforts of the Property Manager to address the substantial life safety issues will continue, that steps to remediate the physical condition of the Property will continue, and that the Receiver's work to stabilize the Property for the benefit of the tenants, creditors, and the estate will not be discontinued.

(25) As the United States District Court for the Eastern District of New York stated in *Dill v. Dime Savings Bank* (*In re Dill*), 163 B.R. 221 (E.D. N.Y. 1994),

> [T]he Bankruptcy Court found that the Dime had to subsidize the repair and maintenance of the Properties, and that there was mismanagement of the Properties. **These two findings . . . are enough to warrant excusing the Receivers from turning over the Properties.**

Id. at  227 (emphasis supplied).

WHEREFORE, the District of Columbia prays that the Court exercise its discretion pursuant to Section 543(d)(1) of the Bankruptcy Code, 11 U.S.C. § 543(d)(1), and grant the District of Columbia's Motion to Continue Retention and Funding of State Court Ordered Receiver Pursuant to Superior Court Orders, and for such other and further relief as the Court may deem just.

Date:  August 4, 2020.

        Respectfully submitted,

        KARL A. RACINE
        Attorney General for the District of Columbia

        DAVID FISHER
        Deputy Attorney General
        Commercial Division
        Office of the Attorney General for the District of Columbia

        /s/ William Burk
        WILLIAM BURK, D.C. Bar No.
        Chief, Land Acquisition and Bankruptcy Section

        /s/ Nancy L. Alper
        NANCY L. ALPER, D.C. Bar No. 411324
        Senior Assistant Attorney General
        Land Acquisition and Bankruptcy Section
        441 4th Street, N.W., Suite 1010S
        Washington, D.C.  20001
        (202) 724-8122
        nancy.alper@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2020, I caused a copy of the foregoing **District of Columbia's Motion to Continue the Retention and Funding of State Court Ordered Receiver Pursuant to Superior Court Orders** to be filed and served electronically using the Court's ECF System.

/s/
Nancy L. Alper
Senior Assistant Attorney General