# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 20-00321 |
| THE BENNINGTON CORPORATION, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CHAPTER 11 TRUSTE'S REPORT AND RECOMENDATION CONCERNING HIGEST AND BEST OFFER FOR SALE OF REAL PROPERTY AND ASSUMPTION AND ASSIGNMENT OF LEASES

TO THE HONORABLE ELIZABETH L. GUNN, BANKRUPTCY JUDGE:

COMES NOW, Marc E. Albert, the duly appointed and qualified trustee of the Chapter 11 bankruptcy estate of The Bennington Corporation ("Debtor"), by and through his proposed undersigned attorneys, and files the following Report and Recommendation Concerning the Highest and Best Offer for Sale of Real Property and Assumption and Assignment of Leases, and in support respectfully represents as follows:

1.      The Debtor filed a voluntary Chapter 11 petitions on July 30, 2020.

2.      Upon consideration of an oral motion filed by the District of Columbia at a hearing seeking to convert the case to chapter 7, on September 21, 2020, the Court issued an *Order Directing the Appointment of Chapter 11 Trustee Upon the District of Columbia's Oral Motion and Denying the District of Columbia's Motion to Convert the Chapter 11 Proceeding to a Chapter 7 Liquidation* directing the appointment of a Chapter 11 trustee for the case pursuant to 11 U.S.C. § 1104(a) and § 1112(b). On September 25, 2020, the Court entered an order approving the appointment of Marc E. Albert as the Chapter 11 trustee and Albert now serves as the duly appointed and qualified trustee ("Trustee") for the Debtor's chapter 11 estate.

3.      On September 30, 2020, the Court held a hearing on the Omnibus Motion for Authority to Assume and Assign Leases of Residential Real Property ("Lease Assumption Motion") filed by the debtor, The Bennington Corporation ("Debtor"), on September 15, 2020 [ECF Dkt. No. 78]. Previously, the Debtor, acting as debtor-in-possession, sought sale of the Debtor's real property located at 4559 & 4569 Benning Road, SE and 4480 C Street SE, Washington, DC 20019, as improved by three 12-unit apartment buildings (the "Property"), and on August 20, 2020 filed its *Motion for Authority to Sell Property of the Bankruptcy Estate Free and Clear of Any and All Liens and Interest Pursuant to § 363 of the Bankruptcy Code On an Expedited Basis* ("Motion to Sell") [ECF Dkt. No. 28] seeking sale of the Property to A Plus Management LLC and/or its assigns ("A Plus") free and clear of liens and interests other than those of existing tenants. A hearing on the Motion to Sell was held on September 2, 2020, whereby a second potential purchaser, Manna, Inc. and or its assigns ("Manna") offered a competing offer for purchase of the Property. At the conclusion of the sale hearing, the Court made oral rulings finding that the A Plus offer presented the highest and best offer for the Property and tentatively approved sale of the Property to A Plus. However, in a written ruling entered the following day on September 3, 2020 [ECF Dkt. No. 64], the Court noted that after further review and consideration of the issues, that the Motion to Sell did not clearly request that the Debtor be allowed to assume and assign the leases for the Property tenants, nor had the parties addressed at the September 2, 2020 hearing whether the Debtor was able to satisfy the requirements 11 U.S.C. § 365 that would typically be presented in a motion for assumption and assignment incident to the sale. Because assumption and assignment of the leases was and remains a necessary component to the proposed sale, the ability of the Debtor to receive approval of such a motion to the purchaser of the Property (and components of a purchaser's offer that

could better provide an avenue allowing the Debtor to receive such approval) were needed to properly evaluate whether the A Plus offer remained the best and highest for the Property. The Court, therefore, ordered that the Motion to Sell to A Plus could not be granted unless the Court specifically grants a motion seeking to assume and assign the leases incident to the proposed A Plus sale. It was in this context that the Debtor filed the present Lease Assumption Motion.

4. Between the time of filing of the Lease Assumption Motion and the September 30, 2020 hearing on that motion, the Court granted a motion of the District of Columbia to appoint a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) and § 1112(b) and on September 24, 2020 approved the appointment of Marc Albert as chapter 11 trustee for the bankruptcy estate ("Trustee"). The Debtor now no longer serves as debtor-in-possession and consideration of the estate's interests in sale of the Property (and, ultimately, the authority to sign a deed conveying the Property upon court approval) now rests with the Trustee.

5. Subsequent to the filing of the Court's September 3, 2020 Order and ahead of the September 30, 2020 hearing, Manna, through filings with the Court and in communications with the Trustee, both modified it original offer for purchase of the Property and offered support as to why it maintains the highest and best offer for sale over A Plus.

6. At the September 30, 2020 hearing on the Lease Assignment Motion, the Trustee noted the changed circumstances of his recent appointment to the case and the atypical factors related to his and the Court's consideration now of competing offers to purchase from A Plus and Manna, and asked the Court for a short continuance to allow the potential purchasers to submit their best and final offers for the Property and further time for the Trustee to evaluate those offers and make a recommendation to the Court. With no objections to the Trustee's proposal, the Court granted the Trustee's proposal and on October 1, 2020 entered its Scheduling Order

Concerning Continued Hearing on Omnibus Motion for Authority to Assume and Assign Leases

of Residential Real Property and Further Consideration Regarding Sale of Real Property Free

and Clear of Liens ("Scheduling Order") [ECF Dkt. No. 109]. The Scheduling Order provided

that potential purchasers submit their best and final offers to the Trustee by October 2, 2020 and

for the Trustee to inform the court of his recommendation of the highest and best offer for the

Property by October 5, 2020.

7.      On October 2, 2020, both A Plus and Manna submitted their best and final offers

to the Trustee. Neither submission materially changed terms from offers previously provided to

the Trustee, but did offer support as to why each offer represented the best and highest offer

available to the Trustee based on the structure of the form of offer submissions contained in the

Scheduling Order. Those offers are summarized below.

**A Plus Management, LLC / Fort Dupont, LLC's Offer**

8.      A Plus's previous offers for the Property provided that it be sold to A Plus or its

assignee. In that respect, A Plus has informed the Trustee that it has formed Fort Dupont, LLC as

the entity to which the Property would be conveyed. As further described in the offer submitted

to the Trustee, if approved, A Plus would be liable for all liabilities under the proposed contract

for sale of the Property, with the Property then conveyed to Fort Dupont and both A Plus and

Fort Dupont jointly and severally liable for other obligations contained in its offer. Significant

terms of the A Plus offer are as follows:

    **A.  Sale Price: $2,626,000.00***

            a.   A Plus increased its offer from that previously stated before the

                 Court to $2,626,000. The A Plus offer further provided escalation

                 terms for the sale price offered, stating that the its offer would beat

any offer by Manna, Inc. or any other bidder by $1,000, up to a specific value stated in its offer. In the event that the September 30, 2020 hearing in some way results in additional bidding for the Property, the Trustee is not including the maximum sale price amount included in A Plus's offer at their request. However, for evaluation purposes, the Trustee has evaluated the A Plus offer based on the maximum amount offered by A Plus.

b.  A Plus has included evidence of its loan commitments and financial capacity with its offer and the Trustee trusts in A Plus's financial ability to close by the timeframe they have requested.

**B.  Closing Timeframe:  October 21, 2020 – October 27, 2020**

a.  The A Plus offer provides that it is contingent on sale being approved by the Court in time for the eventual sale order becoming final for a closing by October 21, 2020 and that failure to obtain approval through a final order by October 21, 2020 would provide A Plus and Fort Dupont with the right to void its agreement and receive return of its deposit. Further clarification in the A Plus offer details that time is of the essence with respect to the A Plus October 21, 2020 closing deadline, but that it would consider the sale order including a later closing deadline of October 27, 2020, on the condition that A Plus be allowed to begin renovation work on or before October 21, 2020 to allow it to keep certain building permits it has already received in place.

Based on the need to receive inspections by a certain deadline for the building permits A Plus has received, as well as other information received by the Trustee concerning A Plus's need to close within the short timelines requested, the Trustee believes that time truly is of the essence with respect to the A Plus offer and that if an order approving assumption and assignment of leases as well as sale of the Property to A Plus were not entered at or shortly after the September 30, 2020 hearing, that there would not be enough time for entry of an order on sale within the timeframes specified by A Plus, and they would be likely to pull out of its offer for sale.

## C.  Interim Period Repairs for the Property

a. The A Plus offer provides that between the relatively short period of time between approval of the sale by the Court and closing on the approved sale, A Plus will immediately on October 8, 2020, begin work on certain immediately needed repairs and other abatement for the for the Property and continue this work until completion. An Immediate Repair Budget included in the A Plus offer details anticipated work and cost estimates for work to begin during this period, most of which matches flagged work also contained in Manna's submitted abatement plan for the Property. The A Plus Plan also flags certain work it would begin not included in the Manna Plan including:

      i.    Replacing Leaking Toilets throughout[1] -   $7,500

      ii.   Roof Repair -                   $1,000

     iii.   Cleaning the hallways and replacing   $  500
            burned out hallway lighting

     iv.   Electrical work focused on life-safety  $7,500
            Issues included in extra contingency budget

     v.    Increased budget for trash cleanup    $1,000
            ($500 more than provided in Manna plan)

b.    A Plus's overall budget for immediate work is $65,000.

c.    During this period, A Plus will take over the $2,400/month management fee charged by Catalyst for the Property

d.    The A plus offer provides that its costs for the work flagged above would be secured by a lien against the Property and payable back to A Plus if the Trustee is unable to close on sale on or before October 27, 2020 or if A Plus and/or Fort Dupont are not allowed to start work before October 21, 2020 (and presumably A Plus pulls out from further pursuing closing on sale.)

**D.  Treatment of Tenant Claims**

a.    A Plus has agreed that it will waive all claims for past due rent, and will not charge tenants rent moving forward until the Property is brought up to Code.

---

[1] The A Plus notes that work to replace leaking toilets and other plumbing work would serve the purpose of addressing high monthly water bills currently experienced at the Property (currently averaging approximately $7,500/month.)

b. A Plus further has submitted a proposed Abatement Plan for the
Property. As described in the A Plus offer, because the abatement
plan previously submitted by Manna has been already been
approved by the tenants represented by the Property tenants'
association, A Plus's abatement plan was modeled using this plan
with minor modifications added to address concerns raised by
some tenants not currently represented by the tenants association
and to further make the abatement plan consistent with the plan
proposed by the Debtor and approved by the Superior Court on
July 23, 2020.

c. A Plus has further offered, upon assumption and assignment of the
underlying tenant leases, to assume liability of the bankruptcy
estate for tenant claims under the leases, including obligations to
pay back security deposits, **up to a maximum limit of $50,000.**

i. A Plus's proposal assumes that tenants will file claims
under their leases against the estate and, upon resolution
(with prior notice to A Plus and Fort Dupont and an
opportunity by them to resolve the claim before payment
by the estate), A Plus will supply funds to the estate to pay
the claims up to the proposed $50,000 limit.

ii. The A Plus offer makes clear that its agreement to
indemnify the estate up to the proposed $50,000 limit
refers only to "claims seeking damages, penalties, or

attorney's fees for breach of the landlord's obligations under the leased agreement assumed hereunder." Specifically excepted and not included in the A plus indemnification offer include liability of the estate for:

1.  Claims secured by liens that must be paid at closing to convey good title;

2.  Monetary liability of the estate that may arise from the pending Superior Court Case;

3.  Claims arising through tort law (*e.g.* personal injury claims or misrepresentations by the Debtor) or statute (*e.g.* the Consumer Protection Procedures Act, D.C. Code § 28-3905 et seq.); or

4.  Claims where liability is predicated on a regulatory violation for which the tenant may recover monetary damages independent of a contract breach, civil penalties, attorney's fees or other relief from its landlord.[2]

iii.   A Plus further has provided a buyout offer to tenants to waive claims and move from the Property. The amount of the buyout offer was previously set at $6,000 and accepted

---

[2] The A Plus Offer, however, notes that if a tenant could have also recovered these regulatory damages based on breach of contract that A plus would reimburse the estate for these damages up to the offered $50,000 limit.

by three tenants. The best and final offer has increased the buyout option to $8,000.[3]

### E. Status of Negotiations with the District of Columbia and Tenants Association

    a. The A Plus offer notes that it has submitted its proposals to the District of Columbia and the Tenants Association, but notes that further negotiations with both are "on hold" based on both the District and Tenants Association supporting the Manna offer.

    b. Concerns raised by the District and the Tenants Association to the A Plus offer and plan for the property include, among other concerns, that A Plus's previous plan for the Property was too vague, that A Plus and its owners lacked experience dealing with similar types of properties, and concern over A Plus's proposed plan and ability to properly relocate tenants during the rehabilitation process.

## Manna, Inc.'s Offer

9.    Manna's best and final offer was substantially similar to its offers previously submitted to the Trustee and the Court, although structured to respond to the categories included in the Scheduling Order. While the proposed purchase price for the Property is slightly less than that of A Plus, the Manna offer provides further considerations benefitting the bankruptcy estate favoring it as the highest and best offer for sale. A summary of the Manna offer is as follows:

### A. Sale Price: $2,625,000.00

---

[3] The A Plus offer notes that those tenants that have already agreed with it on a buyout at the lower value would also receive the higher $8,000 buyout offer.

a. Manna has offered to purchase the Property for the contract sale price of $2,625,000.00 and has offered an Earnest Money Deposit of $75,000.

b. Manna has submitted a financing application to Local Initiatives Support Corporation ("LISC"), who reviewed the application and issued a Term Sheet attached to the Manna offer of up to $3,281,000 for purchase of the Property and financing of proposed rehabilitation construction.

c. The Trustee has reviewed the financing information included in the Manna offer and generally trusts in their ability to close on a sale of the Property at the price points and timeframe outlined in the Manna offer.

d. Manna has confirmed that liability to the estate for failure to close would be limited to a return of the earnest money deposit.

**B. Timeline for Closing: By December 31, 2020**

a. Manna's offer anticipates a closing some time in December 2020, but before the end of the 2020 year. Manna's proposed closing timeline is based on timing needed to complete logistical work and receive full financing approval from LISC, and following that further time to complete settlement of sale.

**C. Interim Period Repairs for the Property**

a. If approved for sale, Manna has committed to start work to correct housing code violations at the Property immediately upon entry of

an order approving their contract for sale, up to a limit of $50,000 credited towards their purchase price for the Property. Manna further has offered using its own workers and subcontractors for this proposed work as necessary to reduce and control the costs of their proposed work. Specific immediate work to be completed has been budgeted and listed in an Abatement Plan provided by Manna that has tentatively been approved by the Tenant's Association, and counsel for individual tenants.

b. In addition to serving a credit towards the purchase price for the Property, if Manna were approved for sale, but was unable to close on such sale, their funds expended for this work (up to $50,000) would become a priority lien against the Property if it were sold to another buyer.

**D. Treatment of Tenant Claims**

a. Manna's offers proposes that the Trustee assume and assign all leases to Manna and with that assignment, that Manna assume any liability that the Trustee may have to the tenants of the Properties under their leases, excluding any liens that must be paid at settlement in order to convey good title to the Property, and any monetary liability of the estate that may arise from the Superior Court Case. Manna's offer assumes that any security deposits held on behalf of the estate would be forwarded to Manna upon sale, but if such deposits do not currently exist, that Manna is prepare

to assume liability for returning tenant paid security deposits to tenants at the Property. Manna's offer provides a conservative estimate of $280,000 to $560,000 ($10,000 to $20,000 per unit) as the value to the estate of its assumption of liability for these claims.

b. The Manna offer to assume liability under the leases does not include personal injury claims[4].

**E. Status of Negotiations with the District of Columbia and Tenants Association**

a. Manna's offer notes that it has engaged in extensive negotiations with District of Columbia, counsel for ten individual tenants (Legal Aid), and counsel for the Property tenants association. Through those discussions, Manna has prepared and supplied to those parties a proposed abatement plan. All have been satisfied and supportive of the plan and approach proposed by Manna, and the Trustee has received confirmation from these parties that they support Manna as purchaser of the Property over A Plus under Manna's proposed terms.

b. Manna has provided that it is committed to memorializing its proposed abatement plan and other tenant considerations into a legally binding Memorandum of Understanding for submission

---

[4] The Trustee has confirmed that liability insurance is in place for the Property, which would serve to limit estate liability for personal injury claims.

and approval in the Superior Court Case and otherwise binding

Manna to its proposed terms with the tenants of the Property.

**Trustee's Evaluation and Recommendation of Manna's Offer as the Highest and Best**

10.    The Trustee has reviewed the best and final offers submitted by A Plus and

Manna, and based on the Trustee's business judgment, supports the offer supplied by Manna as

the highest and best for the Property.

11.    If this were a simpler sale of real estate, the A Plus offer, in offering a higher

price and quicker closing date, would nominally represent the highest and best offer received for

the Property. However, due to the long-standing health and safety issues present at the Property,

and the fact that the Property is already currently involved in contentious litigation with the

District of Columbia in the Superior Court Case, Manna's status as the chosen purchaser by the

District and the tenants coupled with Manna's agreement to assume all liability of the estate

under the leases provides important consideration to the estate causing the Manna offer to eclipse

that of the offer supplied by A Plus.

12.    At the outset, the Trustee does not believe that the A Plus offer as it currently

stands represents an offer that the Court can approve and the Trustee close within the timeframe

A Plus has required. According to A Plus, sale of the Property must close by October 27, 2020

otherwise, A Plus will likely pull out from the sale. Based on the time needed for an order of the

Court to become final after entry, this timeframe all but requires entry of an order of the Court

approving assumption and assignment of leases and sale of the Property to A Plus at or shortly

after the upcoming October 7, 2020 hearing. However, it does not appear that the A Plus offer

presents a procedure and consideration that will allow approval of assumption and assignment of

the underlying leases at the upcoming October 7, 2020 hearing.

13.     As noted in the Court's September 3, 2020 Order, approval of assumption by the estate and assignment of leases to the approved purchaser pursuant to 11 U.S.C. § 365 must occur before the court can approve sale of the Property. Section 365 requires that before assumption and assignment can occur, the estate must cure existing defaults under the leases and compensate tenants for pecuniary losses arising from defaults under their leases or provide adequate assurance of prompt compensation for such losses. 11 U.S.C. 365(b)(1)(A)-(B).

14.     To address tenant claims, A Plus has offered up to $50,000 to provide to the estate for payment towards tenant claims. In addition to the limited value, A Plus's offer presumes that such claims would be handled and litigated within the Bankruptcy Case by the Trustee, with payment then provided to the estate (up to the $50,000 limit) to cover any liquidated tenant claim liability. This plan presents issues associated both with A Plus's proposed indemnification value, as well as timing.

15.     Tenant claims are a serious liability concern to the estate. While not conceding that the estate is liable for such claims, the Trustee notes that the Property has existed in a state of disrepair for quite some time. In talks between the Trustee and counsel for the tenant association and individual tenants, the Trustee was informed that in similar situations to that present at the Property, typically valuation of claims is calculated at the first instance by taking the full monthly rent and multiplying that sum over the thirty-six month statute of limitations period for such claims due to the likelihood that tenants were deprived of the full value of their apartment unit over the course of that period. Application of this formula to the current tenant rental values returns a claim estimate of $773,532.00. Further, a 2018 expansion of the D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901 et seq. (the "CPPA") now provides a private right of action under the CPPA and provides for the potential of treble damages, which

if calculated in full could provide potential tenant liability to the estate of upwards of $2.3

million. This further does not factor in administrative costs to the estate to actually litigate

individual tenant claims, nor the fact that claims may exist for tenants that may have moved from

the Property. Even assuming the non-trebled $773,000 estimate, this amount dwarfs the $50,000

offered by A Plus for these claims and further would not be covered by estimated surplus sale

proceeds to the estate from the sale. Further clarification of what claims the estate could expect

could be gathered following expiration of the December 7, 2020 claims bar date in the case.

However, since A Plus requires entry of an order approving its sale to occur now, waiting for

filing of tenant claims to occur (or arriving at a global settlement with tenants resolving claims)

is not an option presently available. The A Plus's short but strict timetable for closing thus serves

more a detriment rather than a positive.

16.     This is contrasted with the offer supplied by Manna, who has agreed to assume all

liability under the leases, essentially off-loading them from the estate. Because Manna has not

supplied a dollar limit to their acceptance of liability, the need to more definitively know the

value of such claims following expiration of liability is removed. Additionally, while Manna has

not yet negotiated waiver of claims it has agreed to accept from all the tenants, early acceptance

of Manna's proposed Abatement Plan by counsel for the tenants association and individual

tenants represented by Legal Aid, represents likely adequate assurance that Manna can cover

prior losses under the leases (through likely agreed waiver of tenant claims upon entry of a

proposed legally binding memorandum of understanding) and further assurance that Manna will

be able to further perform under the leases pursuant to 11 U.S.C. § 365. In the likelihood that

Manna does reach an agreement for treatment of tenant claims and abatement of the Property,

and moves forward with its intended plan to submit such plan for approval in the Superior Court

Case, the Manna Offer further provides additional benefit to the estate through reduction in

estate's liability associated under that litigation not necessary linked to requirements under 11

U.S.C § 365, but important to overall liability to the estate.

17.    Although the A Plus offer provides a nominally higher sale price and quicker (but

strict) closing timeframe, the value to the estate associated with Manna's assumption of tenant

lease claims represents value to the estate multitudes higher than the surface level differences

between the A Plus and Manna offers. Perhaps more important, the Manna offer and status as the

preferred tenant purchaser, presents an offer that can allow assumption and assignment pursuant

to § 365 and sale approval now. For these reasons, the Trustee submits that the offer submitted

by Manna, Inc. represents the estates highest and best offer for sale of the Property.

**Further Procedures and Service of Recommendation**

18.    Although the original Motion to Sell and Lease Assignment Motion were

submitted by the Debtor prior to the appointment of the Trustee and were not the Trustee's

motions, the Trustee submits that the present exigent circumstances concerning the purchase of

the Property warrant entry of orders approving assumption and assignment of leases pursuant to

11 U.S.C. § 365 and sale of the Property free and clear of liens pursuant to 11 U.S.C. § 363 now

without filing of new motions by the Trustee. Support regarding satisfaction of the requirements

for assumption and assignment on the terms of Manna's offer are detailed above. With regards to

meeting the requirements for a sale free and clear of liens pursuant to 11 U.S.C. 363(f), the

Trustee's review of the case indicates that the sale price and further considerations offered in the

Manna offer will generate sufficient proceeds to pay all known liens against the Property, as well

as anticipated administrative claims is anticipated to generate funds for distribution to the estate's

unsecured creditors. Sale free and clear of liens is appropriate pursuant to 11 U.S.C. § 363(f)(3).

19.    Further, Manna has negotiated their offer at arm's length through counsel in good faith. The Trustee therefore submits that the order approving sale of the Property provide that they are a good faith purchaser pursuant to 11 U.S.C. § 363(m). In these respects the Trustee intends to prepare and submit a proposed order to the Court at the upcoming October 7, 2020 hearing providing for assumption and assignment of leases pursuant to 11 U.S.C. § 365, and a further proposed order providing for sale of the Property free and clear to Manna or its assigns pursuant to 11 U.S.C. § 363 and further detailing all known liens upon which the order proposes the Property to be sold free and clear of, with such liens attaching to the proceeds of sale, and providing that Manna is a good faith purchaser pursuant to 11 U.S.C. § 363(m).

20.    Prior to the October 7, 2020 hearing, the Trustee further intends to file a motion requesting that the court set a bar date for administrative claims and, in an abundance of caution, for submission of lease cure amounts[5]. The tentative date for the Trustee's requested administrative and lease cure bar date will be November 20, 2020, but may be adjusted prior to filing of the Trustee's anticipated bar date motion.

21.    At the September 30, 2020 hearing the Court raised questions over whether the tenants had received proper notice of the Lease Assignment Motion and plans to sell the Property. In an effort to provide as much notice as possible to the tenants of the Trustee's current plans for the Property, the Trustee, with assistance from Catalyst, intends to hand deliver the present Trustee recommendation, as well as the Court's previous October 1, 2020 Order (including the date of the upcoming hearing), to each tenant unit at the Property today, October 5, 2020. Additionally, the Trustee has provided service by mail to all judgment creditors not

---

[5] With Manna's agreement to assume liability under the leases for the Property, the Trustee does not anticipate cure amounts being owed to tenants.

already included in the mailing matrix maintained by the Court that were picked up pursuant to

the Trustee's received title report.

WHEREFORE, Marc E. Albert, Trustee, respectfully requests that this Court enter an Order

pursuant to the terms of Manna, Inc.'s submitted offer:

a)      approving assumption by the estate and assignment to Manna, Inc. of all tenant

leases;

b)      approving sale of the Property free and clear of liens to Manna, Inc. as a good

faith purchaser pursuant to 11 U.S.C. 363(m); and

c)      granting such other and further relief as this Court may deem just and equitable.

Dated:  October 5, 2020                              Respectfully submitted,

                                                    /s/ Joshua W. Cox
                                                    Joshua W. Cox, No. 1033283
                                                    STINSON LLP
                                                    1775 Pennsylvania Ave., N.W., Suite 800
                                                    Washington, DC 20006
                                                    Tel. (202) 728-3023
                                                    Fax (202) 572-9943
                                                    joshua.cox@stinson.com
                                                    *Proposed Attorneys for*
                                                    *Marc E. Albert, Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that I did serve a copy of the foregoing Chapter 11 Trustee's Report and Recommendation Concerning the Highest and Best Offer for Sale of Real Property and Assumption and Assignment of Leases on October 5, 2020, electronically via the Court's ECF system, and by first class mail, postage prepaid, upon, all parties included on the attached mailing matrix, and upon the following:

Kristin S. Eustis, Esq.
Office of the United States Trustee
1725 Duke Street
Alexandria, VA 22314

The Bennington Corporation
12577 Royal Wolf Rd.
Fairfax, VA 22030

Wendell W. Webster, Esq.
Webster & Fredrickson, PLLC
1775 K Street, N.W.
Suite 290
Washington, DC 20006

Nancy L. Alper
Senior Assistant Attorney General
Office of the Attorney General for the
District of Columbia
441 Fourth Street, N.W., Suite 1010S
Washington, DC 20001

Jonathan Gold, Esq.
Dickinson Wright, PLLC
International Square
1825 Eye Street, NW
Suite 900
Washington, DC 20006

Benjamin P. Smith, Esquire
Shulman, Rogers, Gandal, Pordy & Ecker,
P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854

Rachel A. Rintelmann, Esq.
Mel Zahnd, Esq.
LEGAL AID SOCIETY OF THE
DISTRICT OF COLUMBIA
1331 H Street NW #350
Washington, DC 20005

Arthur Lander, C.P.A., PC
300 N. Washington Street, Suite 104
Alexandria, VA 22314

William A. DeVan, Esq.
Constructionlex, PLC
2121 Eisenhower Ave., Suite 200
Alexandria, VA 22314

Rosa J. Evergreen, Esq.
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Avenue NW
Washington, DC 20001

Taylor Healy, Esq.
Bread for the City Legal Clinic
1640 Good Hope Road, SE
Washington, DC 20020

Leon Straughter and Stephon Henderson
c/o Blair Gilbert, Esq.
Legal Aid Society of DC
1331 H Street NW, Suite 350
Washington, DC 20005

Lauren Adams
c/o Blair Gilbert, Esq.
Legal Aid Society of DC
1331 H Street NW, Suite 350
Washington, DC 20005

Logan Tax Services, LLC
c/o Heidi S. Kenny, Esq.
Kenny Law Group, LLC
11426 York Road, 1st Floor
Cockeysville, MD 21030

Shewit T. Woldegabrael
c/o Kos N. Johns, Esq.
11820 Parklawn Drive
Suite 350
Rockville, MD 20852

         /s/ Joshua W. Cox
         Joshua W. Cox